In the Matter of the Estate of JOSEPH LEIDENGER, Deceased

Surrogate's Court, New York County, February 8, 1940.

*Schechter & Sulzberger,* for the petitioner.

*Duer, Taylor, Wright & Woods,* for the respondents.

*Dennis K. Keller,* special guardian.

FOLEY, S.    The single issue presented for determination in this proceeding is whether the decedent at the time of his death was domiciled in the State of New York or in the State of New Jersey.

Joseph Leidenger was born August 10, 1859, at Cincinnati, Ohio. He resided there at the time of his first marriage in 1893 and continued to live in that city for a few years thereafter.

Sometime after the turn of the century, Mr. Leidenger came east and took up residence at Asbury Park, N. J.    He was employed by the Dayton Manufacturing Company of Dayton, Ohio, and appeared to have an office in New York city.    This business association was continued up until the time of his retirement several years ago.

It is very difficult to follow Mr. Leidenger's intent as to his residence in the period between 1921 and 1935.    His travels were extensive and his given addresses were conflicting.    There is evidence that even at this period he had come to regard New York city as his main place of residence, for in a letter to a physician he wrote from the Hotel Commodore under date of May 10, 1932: " Just arrived home today."    However, from this time on he gives increasing evidence of an intention to make New York city his principal place of abode.

When Mr. Leidenger registered at the Hotel Commodore on October 1, 1935, he gave his residence as New York city.    He remained there until November eighteenth of that year.    About this time his first wife died.    In each of the years 1935 and 1936 he stayed for most of the month of September at Haddon Hall, Atlantic City, N. J.    On August 9, 1937, he registered there with his bride and remained there until September 28, 1937.    On each of these visits the registration in the handwriting of Mr. Leidenger gives his address as New York city.    In view of the fact that he claimed a New Jersey domicile this registration at a New Jersey hotel is very persuasive that his true and actual residence was in New York.

In the early part of 1937 he was asked in a letter to furnish the writer with his permanent address.    In reply, he said: " My personal address is The Commodore Hotel, 42nd Street and Lexington Ave., New York City."

On June 2, 1937, Mr. Leidenger married Remle Monroe Hand in the city of New York.    In his application for the marriage license

and in the requisite supporting affidavit the groom was asked to state his " Place of residence," and he made answer, " Commodore Hotel, N. Y. City." Then and for some years before that date he had lived at that hotel. This declaration made under the sanctity of an oath is of impressive weight in support of a finding that his domicile was then in this State. On the trip which followed their wedding the couple were guests at several hotels in Canada, and the resident address given by Mr. Leidenger at each place was the Hotel Commodore, New York city.

After their return to New York city in September, 1937, they went to live at the Hotel Pennsylvania. The records show that in October, 1937, they engaged a room there and continued to occupy that same room up to May 20, 1939, when the husband went to the hospital for his final illness. Mrs. Leidenger continued to occupy that room up to the time of her husband's death in August, 1939.

Statements made by Joseph Leidenger to various witnesses indicate clearly that he regarded the Hotel Pennsylvania as his home. Mr. McCabe, the general manager of the hotel, had a discussion with him in August or September of 1937 concerning a permanent rate at a special monthly charge and concluded an arrangement with him. At Mr. Leidenger's request the rooms were subsequently redecorated. At no time did he mention to the manager any claim of a New Jersey residence. In conversations with a broker he said that he intended to stay at the Hotel Pennsylvania as a permanent guest. To other witnesses he confided that he preferred hotels to apartment houses and that he considered the Hotel Pennsylvania as his home. In a letter written from that hotel under date of September 29, 1937, he used the significant words, " On my return home," plainly referring to New York city. And to a frequent visitor he made the remark that " he was going to stay right home here and watch his securities," again referring to this city.

Significant, also, is a news statement appearing October 17, 1938, in the bulletin of the Ohio Society in New York of which he was a member. This article was written after consultation with Mr. Leidenger in the course of which he furnished his home address. The article read in part: " Mr. Leidenger has made his home at the Hotel Pennsylvania for several months."

That he regarded the Hotel Pennsylvania as the domicile of his wife is clear beyond all doubt. In January, 1939, he wrote to the Treasury Department advising them that " Mrs. Leidenger's address is now Hotel Pennsylvania, New York City, instead of 260 West End Avenue, New York City (which was her residence

before marriage). Moreover, Mrs. Leidenger registered in New York city for the purpose of voting in 1937 and 1938, and in the former year her husband was with her, although he did not register.

The decedent was admitted to the New York Hospital on May 20, 1939. The registrar of the hospital testified that whenever a patient gave a hotel address he was always asked for the permanent address. The testimony of the witness and the records of the hospital indicate that decedent gave the Hotel Pennsylvania as that permanent address.

In support of their contention that Mr. Leidenger at the time of his death was domiciled in New Jersey the respondents rely principally upon the fact that he desired to be considered a resident of Asbury Park, N. J. He manifested that intention not only in his last will which recited that domicile, but in his Federal income tax returns over a period of years which bore the address, Asbury Park, N. J. No street address was ever given. He informed the accountant who prepared these returns that he considered himself a resident of Asbury Park. The reason for this is not difficult to understand. He never filed a New York State income tax return and clearly intended to avoid paying any taxes here.

According to the evidence decedent last occupied a private dwelling in Asbury Park in the year 1927. Just after the death of his first wife in 1935 he visited Asbury Park for only one short stay. Thereafter he went there not at all, not even for a single visit nor for a sojourn of only a day. He maintained no place of abode there and had not even a particular mailing address. There is no evidence that he ever voted or registered for voting there. We may assume that up to the year 1927, or perhaps even as late as 1935, by intent and fact, he was a legal resident of Asbury Park. Even so, it is clear that thereafter he made his home in fact in New York city and in no other place. This is abundantly clear from his actions and his own statements, oral, written and under oath. There is no single bit of evidence that decedent had ever expressed, after 1935, an intention of some day returning to Asbury Park to make his home there, and the logical inference from the evidence offered is to the contrary. The burden cast upon the petitioner of establishing the change of residence from Asbury Park to New York city has been amply sustained. Certain it is that the great preponderance of evidence shows that from his marriage in 1937 to his death his matrimonial domicile was in New York city. This is a matter of vital concern to his widow, the petitioner here. The exercise of her right of election under our section 18 of the Decedent Estate Law will give her considerably more than she would take under the trust provisions of the will.

The facts disclosed here do not present the situation where a person with two residences assumes to fix one as his domicile in law. It is rather an attempt to fix domicile in a place where a person had no residence at all. What was said in *Matter of Trowbridge* (266 N. Y. 283, 292) aptly characterizes Mr. Leidenger's bare assertions of New Jersey domicile: "These * * * were all parts of an attempt to vindicate an opinion that a man may retain an abandoned home as a technical domicile in law after he has elsewhere established another abode in which he expects to live indefinitely."

I have elsewhere commented on the force of assertions of domicile made in a will, where such assertions are in conflict with the real facts (*Matter of Wendel*, 144 Misc. 467, 477), and there pointed out that " Similar words of description in wills, inconsistent with the evidence in the case, have been frequently disregarded by the courts." (*Matter of Mesa y Hernandez*, 172 App. Div. 467; affd., 219 N. Y. 566; *Matter of Lydig*, 191 App. Div. 117.)

" Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." (*Texas* v. *Florida*, 306 U. S. 398, 424.) It is the concurrence of the two elements, habitation and intent, that definitely fixes domicile. (*Matter of Newcomb*, 192 N. Y. 238; *Dupuy* v. *Wurtz*, 53 id. 556.) Yet the intent required to effectuate a change of domicile is not necessarily the specific intention to change the legal status. All that is necessary is an intent to make a home in fact, a permanent residence and place of abode. (Restatement, Conflict of Laws, § 19; *Texas* v. *Florida, supra; Matter of Trowbridge, supra; Matter of Dorrance*, 115 N. J. Eq. 268; 170 A. 101; affd., 13 N. J. Misc. 168; 176 A. 902; affd., 116 N. J. L. 362; 184 A. 743; 1 Beale, Conflict of Laws, p. 150.) The principle of law is well established that where one wholly relinquishes his residence in one place and acquires a home in another place he is powerless to alter the legal consequences of his action. This appears to be the law of New Jersey as well as of this State. In the *Dorrance* case (*supra*, p. 277), in the court of first instance, it was said: " If Dr. Dorrance had intended to make his residence in Radnor his actual home for all practical purposes for the rest of his life and intended to live no more in Cinnaminson, he could not retain his legal domicile in Cinnaminson; in such case his intent or wish to retain a technical legal domicile in New Jersey while actually making and intending to make his permanent home in Pennsylvania, would be unavailing." Mr. Justice STONE, writing for the court in *Texas* v. *Florida* (*supra*, p. 426), said: " He could not elect to make his home in one place in point of interest and attachment and for the general pur-

poses of life, and in another, where he in fact had no residence, for the purpose of taxation."

That Mr. Leidenger intended to make his New York residence his permanent home in fact is clearly established. His assertions to the contrary are outweighed and overcome by the facts. The surrogate finds upon the evidence that he died a resident of the county and State of New York. His will is entitled, therefore, to probate in this jurisdiction. Complete the formal proofs as to the execution of the testamentary instruments.

Submit decree on notice admitting the will and codicil to probate.